Louis E. VANNETTER et ux.,
Appellants,

v.

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF SAN ANTONIO, Appellee.

No. 6198.

Court of Civil Appeals of Texas, Waco.

April 9, 1981.

Robert S. Thompson, Robert S. Thompson, Inc., San Antonio, for appellants.

Walter W. Church, Walter W. Church, Inc., San Antonio, for appellee.

HALL, Justice.

This suit was filed on October 1, 1976, by plaintiffs-appellants Louis E. Vannetter and wife against defendant-appellee First Federal Savings And Loan Association Of San Antonio, on a time price retail installment contract executed on July 21, 1971, to recover penalties provided in the Texas Consumer Credit Code (Vernon's Ann.Tex. Civ.St. art. 5069—2.01 et seq.) because of alleged violations under the Code related to the contract. The trial court held that plaintiffs' action on all counts was barred by the limitations set forth in section 8.04 of the Code (art. 5069—8.04), and rendered judgment that plaintiffs take nothing. We affirm the judgment in part, and we reverse it in part.

The following summary of the facts is taken by us from the parties' agreed statement of facts, and from the "statement of the case" set forth in plaintiffs' brief which defendant acknowledges as correct in its brief.

On July 21, 1971, Clifton Tyler purchased a new 1971 mobile home from a dealer in the City of San Antonio, Texas. In connection with the purchase, Tyler executed a combined time price retail installment contract and security agreement in favor of the dealer, on the day of purchase. On the same day, the dealer assigned the contract to First Federal Savings And Loan Association Of San Antonio, the defendant in this case. The contract reflected among other matters that the principal balance was $11,-500.00; the time price differential was $9,630.80; the time balance was $21,130.80; and the time balance was payable in "120 successive monthly installments of $176.09 each, commencing September 5, 1971, and on the same day of each month thereafter."

On April 28, 1975, plaintiffs purchased the mobile home from the original purchaser, Tyler. Plaintiffs paid Tyler an amount of cash, and assumed by agreement Tyler's "rights, obligations and duties" set forth in the original time price contract. On April 28, 1975, upon the request of defendant savings and loan association, plaintiffs executed a series of instruments, including a mobile home credit application, an assumption agreement, and a transfer of equity agreement. These instruments included the agreement by plaintiffs to pay to defendant the unpaid balance of $13,382.84 due on the original contract "in 76 equal payments of $176.09 each" on the 5th day of each month beginning May 5, 1975. Plaintiffs thereafter "fully and timely" paid the scheduled installments of $176.09 to defendant until the contract was paid in full by them on a date (the exact date is not shown in the record) prior to October 1, 1976.

Plaintiffs alleged that the following Code violations resulted from the contract in question:

1. The time price differential exceeded the authorized maximum limit by the amount of $1,005.80.

2. The official fees assessed against the buyer were not separated and identified.

3. The fact that insurance was required to be purchased by the buyer was not disclosed.

4. Two particular provisions of the contract were not printed in required ten point bold type.

5. The amount of premium paid by the buyer for required insurance was not disclosed.

Plaintiffs pleaded that because of the violations they were entitled to recover, under section 8.01 of the Code, "twice the amount of the time price differential contracted for, charged or received, amounting to $19,261.60," plus reasonable attorney's fees. They prayed for these recoveries.

Defendant answered with a general denial, and it also pleaded among other special defenses that plaintiffs' suit was barred by the provisions of section 8.04 of the Code, the statute of limitations applicable to such suits.

As we have said, the trial court sustained defendant's plea of limitations against all of the violations alleged by plaintiffs. This appeal resulted.

The sections of the Code which must be considered and construed by us on this appeal are sections 8.01 and 8.04. They read as follows at all times relevant to this suit:

8.01. "Any person who violates this [Code] by contracting for, charging or receiving . . . time price differential . . . greater than the amount authorized by this [Code], or by failing to perform any duty specifically imposed upon him by any provision of this [Code], shall forfeit to the obligor twice the amount of . . . time price differential . . . contracted for, charged or received, and reasonable attorneys' fees fixed by the court . . ."

8.04. "All such actions . . . shall be brought . . . within four years from the date of . . . retail installment transaction or two years from the date of the final entry made thereon, whichever is later, in the county of defendant's residence, or in the county where the . . . time price differential . . . in excess of the amount authorized . . . shall have been received or collected, or where such transaction has been entered into or where the parties who paid the . . . time price differential . . . in excess of the amount authorized . . . resided when such transaction occurred, or where he resides." [1]

In our case, plaintiffs assert that periodic payments made pursuant to a retail installment contract are in the nature of "entries made thereon" within the meaning of section 8.04, and that accordingly suits for Code violations are not barred until two years after the date of final payment made on the contract. This "continuing violation theory" based merely upon the making of periodic payments, in actions based upon Code violations like the last four violations alleged by plaintiffs, has been rejected by the appellate courts of Texas in the only decisions we have found on the question. *Jim Walter Homes, Inc. v. Smith*, 592 S.W.2d 670 (Tex.Civ.App.—Beaumont 1980, writ ref'd n. r. e.); *Quintanilla v. Harlingen National Bank*, 612 S.W.2d 674 (Tex.Civ. App.—Corpus Christi 1981, no writ). In those cases the term "final entry made thereon" in section 8.04 was construed to mean the final physical entry made on the retail installment contract in setting forth its provisions. The *Quintanilla* court reasoned, "Thus, if any blanks were left unfilled in the contract on the date of execution of the retail installment transaction, which date triggers the four year statute of limitations contained in the Credit Code, and these blanks were subsequently filled in, the date of filling in those blanks would be the date of the 'final entry made thereon.'" The court said, "The statute is not ambiguous. Limitations begins to run from the date of the final physical entry on the retail installment contract in question."

In *Jim Walter Homes* and *Quintanilla* there were no entries made after the date of execution of the contracts. Since the suits in both cases were filed more than four years after the date of execution of the contracts, they were held barred by the four-year period of limitations set forth in section 8.04. We follow this rule to the extent we deem it applicable to our case. However, excessive time price differential was not an issue before the courts in those cases.

1. Effective August 31, 1977, section 8.04 was amended to read: "Such actions may be brought within four years from the date of the . . . retail installment transaction or within two years from the date of the occurrence of the violation, whichever is later . . ."

■ Like our statute dealing with usurious interest (art. 5069—1.06), section 8.01 and 8.04 of the Credit Code set forth three distinct violations regarding unauthorized time price differential. They are: contracting for, or charging, or receiving. The penalty for the first two is the forfeiture to the obligor of twice the amount of the total time price differential contracted for or charged. The penalty for the last is forfeiture of twice the amount of the total time price differential received. Logically, the "date of the final entry made" on the "receiving" of unauthorized time price differential would be the date of receipt of the payment containing it. Considering the statutes in their entirety, we believe this to be the legislative intent expressed therein.

■ The provisions of the contract sued upon in our case establish that the time price differential contracted for and charged therein exceeds by $1,005.80 the maximum amount authorized by the Code. These provisions were placed in the contract at the time of its execution on July 21, 1971, and neither they nor any other provision have been changed by any "entries" made in the contract since the date of its execution. However, between April 28, 1975, and October 1, 1976, the date this suit was filed, plaintiffs made periodic payments to defendant under the terms of the contract which were based upon and included in part the unauthorized time price differential. Under those facts, plaintiffs' actions based upon their last four pleaded violations, and based upon the violations of contracting for and charging excessive time price differential, were barred by the four-year statute of limitations. We affirm the trial court's judgment to that effect. However, plaintiffs' action based upon defendant's receipt of the unauthorized time price differential within two years of the date of suit was not barred by limitations. We reverse the trial court's judgment holding that action was barred.

Plaintiffs' action based upon receipt of unauthorized time price differential is severed from the remainder of the case, and it is remanded for trial on its merits. Rule 434, Vernon's Tex.Rules Civ.Proc. If successful on that action, plaintiffs are entitled to recover twice the amount of the time differential paid to and received by defendant during the two years immediately prior to the filing of suit, plus reasonable attorney's fees.

Costs of this appeal are assessed one-half against plaintiffs and one-half against defendant.

Affirmed in part; reversed and remanded in part.